NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LBS INNOVATIONS LLC, A NEW JERSEY LLC and LBS INNOVATIONS, LLC A TEXAS LLC<br><br>Defendants. | Civil Action No.: 12-cv-0848 (CCC)(JAD)<br><br>**OPINION AND REPORT AND RECOMMENDATION** |

I.  **BACKGROUND**

In this motion, defendants LBS Innovations, LLC, a New Jersey Limited Liability Company and LBS Innovations, LLC, a Texas Limited Liability Company (together, "Defendants" or "LBSI") seek dismissal and/or transfer of this action, wherein plaintiff Microsoft Corporation ("Plaintiff" or "Microsoft") sought a declaratory judgment of noninfringement and invalidity of U.S. Patent No. 6,091,956 (the "'956 Patent").[1]

By way of background, Plaintiff contends that LBSI sued at least twelve Microsoft customers in the United States District Court for the Eastern District of Texas,[2] alleging that

---

[1] The '956 Patent purports to disclose a "wireless system for providing services and time-critical information about places and events to mobile computers and their users." (Opp. Br. 2, ECF No.28). According to the '956 Patent, the disclosed system provides up-to-date information "including travel distances and transit times, entertainment, merchants' messages, area attractions, communications, current locations of system users and traffic congestion." (Id.).

[2] These actions include: LBS Innovations LLC v. Aaron Brothers, Inc, et al. Civil Action No. 2:11-cv-00142-MHS; LBS Innovations LLC v. BP America Inc., et al., No. 2:11-cv-407-MHS; LBS Innovations LLC v. Sally Beauty

1

Microsoft's customers infringed the '956 Patent by using Microsoft's Bing Maps web-mapping services on their websites.[3] (Opp. Br. 1, ECF No. 28). Microsoft filed this action to "protect its product" by obtaining a declaratory judgment that its Bing Maps Services do not infringe the '956 Patent. (Id.). Microsoft brought the action in New Jersey because, at the time of filing, LBSI held itself out as a New Jersey limited liability company. (Id. at 7). However, according to Microsoft, LBSI "shuttered its business and 'relocated' to Texas" within a few days after Microsoft filed the Complaint. (Id.).

In the instant motion, LBSI argued that dismissal is appropriate because LBSI never contended that the defendants in the Texas Actions infringed the '956 patent "based upon their use of any product or service *provided by Microsoft*." (Mem. Law Supp. Mot. Dismiss 11, ECF 26-1) (emphasis added). Accordingly, Defendants argued that there is no case or controversy. Plaintiff, however, essentially argued that Defendants did allege such infringement of the '956 Patent by Microsoft's customers in the Texas Actions. (Opp. Br. 5, ECF No. 28). For example, in one Texas Action complaint, Defendants alleged that two Microsoft Bing Maps Services customers "have been and now [are] directly infringing one or more claims of the '956 Patent . . . by making and/or using in the United States the computer implemented website…which has a store or dealer location interface." (Id.). Plaintiff argued that this "accused store or location

---

Supply LLC, et al., No. 2:11-cv-00409-MHS; and LBSI, Inc. v. CITGO Petroleum Corp. et al., No. 2:11-cv-00408-MHS (collectively, the "Texas Actions"). (Mem. Law. Supp. Mot. Dismiss 3, ECF No. 26-1).

[3] Microsoft provides web-based mapping services used by its customers to put store locators and interactive maps on their websites. (Opp. Br. 5, ECF No. 28). Microsoft provides these services through Bing Maps Services and MapPoint Web Services (together, "Bing Maps Services"). (Id.). Microsoft's customers use Bing Maps Services to provide store-locator applications on their websites. (Id.). These applications allow users of the customers' websites to find nearby stores by entering their zip code or city. (Id.) (citation omitted).

interface" showed that the accused web-mapping services are provided by Bing Maps Services. (Id. at 13).

Accordingly, Plaintiff contended that, relying on Arris Group, Inc. v. British Telecommunications PLC, 639 F.3d 1368 (Fed. Cir. 2011), there is a justiciable controversy. In Arris Group, Inc., the Federal Circuit held that a supplier, like Plaintiff in this case, has standing to sue for a declaratory judgment when (1) the "supplier is obligated to indemnify its customers from infringement liability;" or (2) "there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." Id. at 1375.

Plaintiff argued that it met both prongs of Arris Group, Inc.. First, Plaintiff argued that its customers demanded indemnification.[4] Second, Plaintiff argued that Defendants asserted in the Texas Actions that Plaintiff's customers infringed the '956 patent by using a "store, dealer, or station location interface." (Opp. Br. 21, ECF No. 28). This location interface, Plaintiff alleged, is Microsoft's Bing Maps Services. Accordingly, Plaintiff argued, it "is implicitly – if not explicitly – in [LBSI's] crosshairs." (Id. at 22).

The parties disagree over whether Arris Group, Inc. requires an express accusation of infringement by the *manufacturer's* product. Furthermore, Defendants asserted that Plaintiff improperly submitted evidence outside of the pleadings in this facial challenge to the Amended Complaint. (Mem. Law Supp. Mot. Dismiss 15-16, ECF No. 26-1); (Reply Br. 6-7, ECF No. 29).

---

[4] Plaintiff supported the general allegations of its Complaint with a declaration setting forth the details of the indemnification demand. Although Defendants argued that such a supplementation of the record is inappropriate, the Court need not decide this issue in light of its ultimate ruling regarding transfer.

3

This Court's review of Arris Group, Inc., as it applies to this matter, reveals that there is no way that this Court can conclude whether or not the second prong has been met. Plaintiff contended, somewhat convincingly, that it has. Defendants asserted that Microsoft's products are <u>not</u> specifically targeted. Clearly, the question cannot be definitely answered without resorting to a close review of the contentions, claims, defenses and ultimate rulings made in the Texas Actions. Such an exercise by this Court seems contrary to judicial efficiency.

This leads to the next point of contention. Defendants moved in the alternative to transfer venue of this matter pursuant to 28 U.S.C. §1404(a) to the Eastern District of Texas, which is the venue where the Texas Actions are pending.

The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc. v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010). Pursuant to 28 U.S.C. § 1404(a), the Court may transfer a case to any venue where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "The purpose of § 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense." Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497 (D.N.J. 1998).

The three factors a court must consider when determining whether to transfer a matter pursuant to § 1404(a) are: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Id. In addition to these statutory factors, the Third Circuit established a list of public and private interests that should also be considered when deciding whether to transfer an action:

4

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Johnson v. RiteAid, No. 10-2012, 2011 WL 2580375, at *2-3 (D.N.J. June 28, 2011) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)) (the "Jumara factors").

Thus, the Court must engage in a two part analysis to determine whether a motion to transfer venue should be granted. As a threshold matter, the Court must decide whether the transferee district has proper jurisdiction and venue, such that the case could have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999). The Court must then conduct an "individualized, case-by-case consideration of convenience and fairness" regarding which forum is most appropriate to consider the case. Id. "There is no rigid rule governing a court's determination; 'each case turns on its facts.'" Id. (citing Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (internal citations omitted)). This Court easily concludes that this matter could have been brought in the Eastern District of Texas. Indeed, the underlying patent litigation is already pending there.

Defendants assert that transfer is appropriate because Plaintiff's choice of forum does not receive paramount consideration when Plaintiff has not chosen its "home turf." Am. Tel. & Tel.

Co. v. MCI Communications Corp., 736 F. Supp. 1294, 1306 (D.N.J. 1990). Furthermore, Plaintiff's choice is given less deference when the operative facts occur outside New Jersey. Id. Finally, Defendants argue that the first filed rule works in its favor. The Court finds these arguments compelling.

Addressing the Jumara factors, the parties, not surprisingly, disagree. Suffice it to say that the Court finds neither party to be seriously prejudiced in either venue. The infringement witnesses and documents are located in Texas. Defendants' business is located in Texas and at least now certainly wants to be there. The Court finds no hardship will befall Microsoft if this action is transferred to the Eastern District of Texas. Furthermore, the public interests are satisfied in either jurisdiction.

Plaintiff also makes a point that Defendants' new found home state of Texas is an improper ploy to escape the jurisdiction of New Jersey, citing Dainippon Screen Manufacturing Co, Ltd., et al. v. CFMT, Inc., et al., 142 F.3d 1266 (Fed. Cir. 1998). It is curious that Defendants chose to ignore Plaintiff's argument that Defendants has "shuffled paper" in a "cynical ploy to avoid this Court's jurisdiction." (Opp. Br. 17, ECF No. 28).[5] Ultimately, however, the issue is where this litigation should be venued.

This Court finds that this action could have properly been brought in the Eastern District of Texas. In addition, the issues raised by Plaintiff in its Complaint will be better resolved by a court, i.e., the Eastern District of Texas, that has already begun the process of determining whether Plaintiff's customers have infringed Defendants' '956 patent. The issue of whether there is indeed a case or controversy because Defendants' infringement contentions ultimately

---

[5] The Court finds it equally curious that Plaintiff filed in New Jersey rather than Texas when the infringement litigation, which forms the basis of the declaratory relief sought by Plaintiff, is currently pending in the Eastern District of Texas.

challenge Plaintiff's Bing Map Services is a clear issue for the court that is <u>already reviewing</u> the infringement allegations. The question of Plaintiff's indemnification *vel non* should be decided by the Court who has the indemnitee as a defendant party.[6] All of these issues are better resolved in one forum to avoid duplicative judicial effort and potential inconsistent rulings.

## II. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer the case to the United States District Court for the Eastern District of Texas is **GRANTED**. It is further recommended that Defendants' motion to dismiss be denied without prejudice.

_____  11/8/12
JOSEPH A. DICKSON, U.S.M.J.

cc. Hon. Claire C. Cecchi, U.S.D.J.

---

[6] Although it is unclear whether the indemnitees are necessary parties for purposes of an <u>Arris Group, Inc.</u> evaluation, it would seem most convenient for the parties, putative parties, and the Court to have this issue resolved where the litigation giving rise to any claim for indemnification is already pending.